Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 5485 | DATE | August 12, 2002 |
| CASE TITLE | *Clinton v. Runyon* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Postal Service's motion for summary judgment [54-1] is granted. The clerk is directed to enter a Rule 58 judgment and to terminate this case. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 14 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 AUG 14 PM 12:01 | | |
| RTS | courtroom deputy's initials | FILED-ED 10 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CYNTHIA CLINTON,<br>Plaintiff,<br><br>v.<br><br>MARVIN RUNYON, Postmaster General,<br>Defendant. | )<br>)<br>)<br>) 97 C 5485<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Plaintiff Cynthia Clinton, who has been diagnosed with a herniated disc, filed suit against her former employer, the United States Postal Service, claiming that its failure to renew her employment contract violated the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*. The Postal Service's motion for summary judgment is before the court. For the following reasons, the Postal Service's motion is granted.

**DOCKETED**
**AUG 1 4 2002**

### I. Background

#### A. Clinton's Appointment with the Postal Service

The following facts are undisputed unless otherwise noted.[1] The Palatine Facility of the Postal Service hired Clinton in June of 1994 to serve as an "Automation Transitional Employee" ("TE"). This was a temporary job appointment and was not to extend beyond June 20, 1995. The Postal Service hired Clinton and other TEs to aid in the Palatine Facility's transition from manual to automated operations. The TEs were either assigned to work on the old semi-

---

[1] The court notes that the Postal Service submitted its statement of undisputed material facts "in accordance with Local Rule 12(M)". The Northern District of Illinois renumbered and revised its Local Rules back in 1999, and Local Rule 12(M) and 12(N) are now Local Rule 56.1 and 56.2, respectively. The court assumes that the reference to the old numbering system is a vestigial remnant of the prior motions for summary judgment that the Postal Service began but did not pursue.

automated equipment that was to be phased-out, or on the new automated equipment that would be operated by career Postal employees who successfully obtained permanent positions.[2]

The semi-automated equipment that the TEs worked on during 1994 and 1995 was called the Letter Sorting Machine ("LSM"). To properly sort incoming mail using the LSM, an employee needed to load the machine with trays of letters brought from an intake area, read the zip codes off the letters as they passed through the LSM, and key in three digits of each letter's zip code. To qualify to work on the LSM, TEs were required to pass accuracy training in keying.

Pursuant to a memorandum of understanding between the American Postal Service Worker's Union and the Postal Service (the "Union Agreement"), TEs who failed the LSM training were kept through the end of their contract period and utilized in other work areas where supplemental help was needed. These TEs were often assigned to work with less technical automated equipment, or serve as manual letter sorters or LSM dispatchers. Because Clinton failed the LSM training, she was assigned to dispatch mail at the back of the LSM for the remainder of her contract. As an LSM dispatcher, Clinton retrieved and moved mail from the back of the LSM, after a LSM operator keyed in the zip code information, and then brought it to other areas of the Palatine Facility.

### B. Clinton's Back Injury and Physical Restrictions

The parties dispute when Clinton's back injury occurred. According to Clinton, she hurt her back in early August of 1994 as she reached to get a tray of mail out of a hamper. The Postal Service, however, notes that Clinton told her doctor, Andrew Zelby, that her back pain began in

---

[2] The parties do not define the term "career employee." They also do not define the related term "casual employee." The court will assume, for the purposes of this opinion, that career and casual employees differ from TEs, who are hired for only a specific time period.

July of 1994. Regardless of the exact date of injury, Clinton visited the Palatine Facility's medical unit twice on August 12, 1994 and complained of lower back pain caused by stooping.

In December of 1994, Clinton's legs gave out while she was shopping at a neighborhood store. She went to the emergency room for medical treatment. The examining physician gave Clinton a medical note dated December 26, 1994, prescribing bed rest for two days. Clinton brought the note to the medical unit four days later, and the medical unit nurse transcribed the information into her records.

In January of 1995, Clinton complained to the medical unit of pain in her left leg that stemmed from her back. During her visit, Clinton told the nurse that she recently underwent a MRI, which revealed a possible slipped disc. Clinton did not bring the MRI report or other supporting medical documents to the medical unit at this time.

On February 2, 1995, Clinton again complained to the medical unit nurse of leg pain. She informed the nurse she felt unable to fulfill her dispatch duties because of pain, and mentioned, for the first time, that she felt her leg and back pain were the result of an August 1994 on-the-job injury. The nurse told Clinton to complete injury compensation claim forms and supply medical records to substantiate any request for restricted duty.

On February 9, 1995, Clinton brought a letter from her physician, Dr. Zelby, to the medical unit. The letter indicated that from February 9, 1995 until February 23, 1995, Clinton should not bend, twist or turn, and that she be restricted to lifting 20 pounds occasionally and 10 pounds frequently. The Postal Service granted Clinton's request for light duty work, and assigned her to work as a mail processor in the Manual Letters department. Here, Clinton sorted letters by zip code. She was physically capable of performing her duties in the Manual Letters department because the vast majority of the mail she handled weighed less than one pound.

Clinton went to the medical unit for pain medication on February 24, 1995. Clinton alleges that during her visit, the nurse told her that if she continued to complain of back pain, her employment with the Postal Service would not be renewed. The Postal Service denies that the nurse made any such statement to Clinton.

When Clinton's work restrictions expired on February 24, 1995, Clinton did not resume her LSM dispatcher duties. Instead, she submitted another letter from Dr. Zelby. The letter extended her work restrictions for several weeks. Between February and May 1995, Dr. Zelby wrote five letters restricting Clinton to light duty for an additional three-week time period. In the fourth letter, Dr. Zelby wrote that he expected a full recovery and expected Clinton to be able to "resume full duty" on May 15, 1995.

On May 15, Clinton resumed full duty for several days. She worked as a LSM dispatcher and asserts that she was in extreme pain and only continued to work full duty because the Palatine Facility was very busy. One week after she resumed full duty, Clinton submitted the fifth and final restriction from Dr. Zelby, which extended her restrictions for an additional three-week period.

On March 20, 1995, Clinton filed a claim for workers' compensation benefits. Approximately three months later, on June 9, 1995, Clinton learned that her transitional appointment would not be renewed for another term. Her last day of work was June 17, 1995, the day her one-year contract expired.

In January of 1996 and October of 1999, Clinton underwent surgery to address her back pain. She alleges that the operations failed to eliminate her back pain, and dates the onset of the pain to her injury in August of 1994. She also alleges that the back injury left her permanently unable to engage in significant lifting, bending, turning, twisting, or prolonged standing or

walking. The Postal Service, noting that there are no notations in Clinton's medical unit records of continued or persistent back problems, nor any continued limitations on her ability to work, contends that Clinton's back problems are temporary or episodic.

The parties dispute whether Clinton's supervisors and colleagues at the Postal Service regarded her as being disabled. Clinton claims that supervisors Claudia Midderhoff, Timothy Anderson and William Harris, as well as Nurse Hoffman of the medical unit all perceived her as disabled. On the other hand, the Postal Service concedes that, while some of these individuals may have known of Clinton's work restrictions, none of them thought she was significantly limited in her ability to work.

On May 2, 1994, about a month before Clinton learned that her transitional appointment would not be renewed, the Palatine Facility received instructions from the Postal Service Headquarters to phase out TEs by December 1, 1997. The parties disagree as to how the Palatine Facility responded to the Headquarters' mandate. According to Clinton, the Palatine Facility employs TEs to this date, and thus never implemented the mandate. Clinton claims that she was the sole TE that was not rehired, and that she was singled out because of her disability.

In contrast, the Postal Service contends that Clinton was one of several TEs who were not rehired when their contractual employment period ended. The Postal Service maintains that its decision not to rehire these individuals, who had all failed LSM training, was based on the combination of the downsizing directive and the Union Agreement, which gave priority to employees who passed the LSM test.

After Clinton's contract with the Postal Service expired, she obtained several short-term clerical positions with a variety of firms. Clinton is presently working full time as a clerk with a cable company.

Stepping back in time a bit, on April 28, 1997, Clinton filed a disability discrimination charge against the Postal Service with the Equal Employment Opportunity Commission ("EEOC"). She received a Notice of Right to Sue from the EEOC on May 9, 1997, and filed her complaint with this court on August 4, 1997. The Postal Service did not seriously pursue a motion for summary judgment until this case was ready for trial, which seriously impacted the court's ability to resolve Clinton's claims expeditiously.

## II. Discussion

The Postal Service contends that summary judgment in its favor is proper because Clinton cannot establish that: (1) she is disabled within the meaning of the Rehabilitation Act; (2) her supervisors regarded her as disabled under the Rehabilitation Act; or (3) the Postal Service's decision not to rehire her was due to her back condition. In response, Clinton contends that summary judgment is inappropriate because the Postal Service abused the discovery process. She also claims that genuine issues of material fact exist as to whether her back injury substantially limits her ability to work, she is qualified to perform the essential functions of the mail processor position, her supervisors perceived her as disabled, and whether her contract was not renewed because of her disability. For the following reasons, Clinton is not entitled to a trial on her failure to accommodate or disparate treatment claims. Accordingly, the court will not consider whether she is disabled, regarded as being disabled, or an otherwise qualified employee.[3]

---

[3] The court also notes that the cases and statutes cited in this opinion discuss disability discrimination under both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. The ADA's definition of "disability" was taken "almost verbatim" from the Rehabilitation Act. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). Because "Congresses' repetition of a well-established term carries the implication that Congress intended the term to be construed with pre-existing regulatory interpretation," the court uses the two statutes interchangeably when appropriate. *Id.*; *see also Toyota Motor Manufacturing, Kentucky, Inc., v. Williams*, 534 U.S. 184 (2002) (using Rehabilitation Act provisions to interpret the ADA); *Hamm v. Runyon*, 51

### A. Should the Postal Service's Motion be Denied as a Sanction for Abuse of the Discovery Process?

Clinton submits that the court should deny the Postal Service's motion because it abused the discovery process. Specifically, Clinton notes that the Postal Service's responses to written discovery incorrectly stated that there were no TEs at the Palatine Facility during 1998, 1999 or 2000. Clinton also notes that the Postal Service refused to identify which employees at the Palatine Facility were casual or full-time. She then concludes that the court should deny the summary judgment motion because she did not receive a fair opportunity to discover the information necessary to defeat it.

It is well-established that before summary judgment can be granted, the non-movant should receive a fair opportunity to conduct the discovery necessary to address the factual basis of the motion. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); *Illinois State Employees Union Council 34 v. Lewis*, 473 F.2d 561, 565 (7th Cir. 1972). Because the court granted Clinton's motion to compel discovery about casual and full-time employees and Clinton used this information to prepare a supplemental memorandum opposing the Postal Service's motion, she had a fair opportunity to discover relevant information and present it to the court. As a result, her argument about allegedly deficient discovery responses is unpersuasive.

In addition, the parties have been down this path before. Magistrate Judge Denlow denied Clinton's motion to strike the Postal Service's summary judgment motion based on the Postal Service's alleged discovery abuses. He did, however, allow Clinton to take additional discovery and file a supplemental brief opposing the Postal Service's motion. He also awarded $6,000.00 in attorneys' fees and costs to Clinton. Clinton did not file objections, and the court

---

F.3d 721, 725 (7th Cir. 1995) (using ADA case law to interpret the Rehabilitation Act).

declines to revisit the matter. Accordingly, the court will not deny the Postal Service's motion on this ground.

### B. The Postal Service's Motion for Summary Judgment

#### 1. Standard for a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Finally, the summary judgment standard is applied with added vigor in employment discrimination cases, because issues of intent and credibility are especially crucial. *Wright v. Illinois Dept. of Corrections*, 204 F.3d 727, 730 (7th Cir. 2000).

#### 2. Clinton's Failure to Accommodate Claim

The Rehabilitation Act defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee..." 42 U.S.C. § 12112(b)(5)(A). Clinton alleges that the Postal Service should have accommodated her by renewing her employment contract and assigning her to the Manual Letters department. It is undisputed that

-8-

the Postal Service knew about Clinton's physical limitations. The court thus turns to whether the Postal Service was required to accommodate Clinton in the way she requested.

Under the Rehabilitation Act, an employer's duty to reasonably accommodate a disabled employee includes reassignment of the employee to a vacant position for which she is qualified. *Dalton v. Suburu-Isuzu Automotive, Inc.*, 141 F.3d 667, 677 (7th Cir. 1998), *citing* 42 U.S.C. § 12111(9)(B). The Act also requires the employer to "ascertain whether he has some job that the employee might be able to fill." *Id., citing Miller v. Illinois Dept of Corrections*, 107 F.3d 483, 487 (7th Cir. 1997).

The Postal Service argues that it did not have a duty to accommodate Clinton because she had no legitimate expectation of reappointment under the terms of her contract. Its position, in sum, is that once Clinton's temporary job was over, it did not have to find her an alternative on-going job which she was capable of performing. The court agrees. Once an employee has her foot in the door (because she has a temporary position which has ended), the Rehabilitation Act does not require her employer to "accommodate" her by renewing her contract. In other words, the reasonable accommodation requirement applies to ongoing employees who need assistance to continue to work, not former employees who wish to be rehired.

In essence, Clinton's failure to accommodate claim is really an assertion that the Postal Service did not renew her contract because of her disability. *See generally Cable v. Ivy Tech State College*, 200 F.3d 467, 478-79 (7th Cir. 1999) (discussing burden shifting method used to establish that failure to renew a contract was based on disability discrimination). It is not a failure to accommodate claim. Accordingly, Clinton has not shown that there is a genuine issue of material fact as to whether the Postal Service failed to accommodate her by not renewing her contract, and the Postal Service is entitled to summary judgment as to this issue.

### 3. Clinton's Disparate Treatment Claim

The Rehabilitation Act defines "discrimination" to include "limiting, segregating, or classifying a job applicant or employee in a way that adversely affect the opportunities or status" of the applicant or employee. 42 U.S.C. § 12112(b)(1). Clinton alleges that the Postal Service treated her differently than other TEs by singling her out and not renewing her employment contract because of her disability.

A plaintiff may prove disparate treatment by pointing to direct evidence of discrimination or by using the familiar indirect *McDonnell Douglas* burden-shifting method. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under the indirect method. a plaintiff begins by making out a prima facie case consisting of evidence showing that she: (1) is disabled; (2) is otherwise qualified; (3) was meeting the legitimate employment expectations of her employer; and (4) received less favorable treatment than similarly situated employees. *Hoffman*, 256 F.3d at 572-75.

The crux of Clinton's prima facie case for her disparate treatment claim is the final element: whether she received less favorable treatment than similarly situated employees. According to Clinton, virtually all of the TEs – except her – retained their employment with the Postal Service after their temporary employment period ended. Pointing to payroll records and excerpts from personnel records, Clinton identifies twenty-four TEs who, like Clinton, failed the LSM test. However, unlike Clinton, these individuals were converted to casual employee status when their TE positions ended and continued to work for the Postal Service.

In response, the Postal Service argues that Clinton was not "similarly situated" to the TE employees who were rehired as casual employees because she was limited to light duty, and no light duty casual positions existed at the Palatine Facility. This argument is a winner (at least for

the Postal Service). It is undisputed that Clinton could not perform the essential job functions of a casual employee because of her light duty limitation. An employer is not required to accommodate an employee by eliminating essential job functions. *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912-13 (7th Cir. 1996). Thus, the Postal Service was not required to create a special light duty casual employee position for Clinton after her TE position expired.

And last but not least, Clinton bears the burden of showing that: (1) a vacant position existed; and (2) she was qualified for that position. *See Pond v. Michelin North America, Inc.*, 183 F.3d 592, 595 (7th Cir. 1999). Clinton has failed to point to any vacancy (for either a TE or casual employee, the two positions which she appears to have wanted) at the Palatine Facility which was open when her contract ran out and for which she was qualified. Moreover, the fact that several TEs were converted to casual employees for a period of months and then converted back to TEs does not help Clinton because she was not qualified to be a casual employee, and this does not show that the TE positions were available when her contract ran out. Accordingly, Clinton has failed to establish that she is entitled to a trial as to her disparate treatment claims.

## III. Conclusion

For the above reasons, the Postal Service's motion for summary judgment [54-1] is granted. The clerk is directed to enter a Rule 58 judgment and to terminate this case.

DATE: AUG 1 2 2002

Blanche M. Manning
United States District Judge

97cv5485.sj

-11-